IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Francine Warford, | ) | Civil Action |
| | ) | No. 23-cv-_____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT** |
| Hospice of the Bluegrass, Inc. d/b/a | ) | **Jury Trial Requested** |
| Bluegrass Care Navigators, Inc. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Francine Warford ("Warford"), files this Complaint against Defendant Hospice of the Bluegrass, Inc. d/b/a Bluegrass Care Navigators ("BCN") and alleges as follows:

**PARTIES**

1. Plaintiff is a resident of Charleston County, South Carolina.

2. Upon information and belief, BCN is a Kentucky corporation doing business in Kentucky and who has sought employment/employed remote workers through a Virtual Support Center in states other than Kentucky, including in South Carolina.

**JURISDICTION & VENUE**

3. This Court has personal and subject matter jurisdiction over the claims raised in this Complaint and venue is proper as BCN is a corporation that has sought to employ remote workers in South Carolina through a Virtual Support Center and as the acts and/or omissions giving rise to the causes of action occurred in Charleston County, South Carolina.

4. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce and employing fifteen (15) or more employees within the meaning of Sections 701 of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

5.      On or around May 3, 2022, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") and completed the appropriate paperwork to initiate a charge. Subsequently, EEOC initiated a charge on Plaintiff's behalf, Charge No. 415-2022-01590. A Notice of Right to Sue letter was issued to Plaintiff on March 8, 2023, stating:

> You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed within 90 days of your receipt of this notice…

6.      Warford has timely filed this action within ninety (90) days of the date of her Notice of Suit Rights letter from the EEOC.

7.      Based upon the above, jurisdiction and venue are proper in this Court.

## FACTS

8.      On March 1, 2022, Warford applied through Indeed for an available position as a "Support Center RN" with BCN. The position was advertised as a "100% remote position working from home in no specific geographical location." As such, if hired, Warford planned to work full-time remotely from her home in Charleston, South Carolina.

9.      The remote position, as advertised by BCN, would require Warford to perform virtual tele-health triage functions and phone support to patients of BCN, including hospice patients and their families, from her home.

10.     Warford has been a Registered Nurse since 2014 and has significant experience in the nursing industry.

11.     Following Warford's submission of an application for the position through Indeed, she received an initial telephone call from a recruiter with BCN named "Lisa" who asked her some preliminary questions.

12. On March 3, 2022, Warford was formally notified by email that she had been selected for an interview for the position with BCN. Accordingly, Warford proceeded to schedule a Zoom interview for March 4, 2022.

13. On March 4, 2022, Warford participated in a Zoom interview with Sallie Kenney (Director of Support Center) and Kim Thieneman (Director of Operations). During the Zoom interview, Warford's computer camera was positioned only from neck up and her body was not visible, including her abdominal area.

14. Warford's interview went very well and she was informed that the company had a few more interviews to conduct and would be back in touch with her. She was also informed that there was "no specific projected start date for the position" and that the company was flexible.

15. Warford also received an email notification on March 4, 2022, that she had successfully provided the company with her list of 5 professional references and BCN had sent a link to her references with a survey to complete about her.

16. On March 22, 2022, Warford received a voicemail from Danita Ross (VP Human Resources) asking Warford to return her call. Accordingly, Warford returned Ross' call that same day.

17. During her March 22 call with Ms. Ross, Ross confirmed the hours of work for the position and asked Warford if she would be able to travel at her own expense to Kentucky to retrieve the necessary equipment to work from home in Charleston. After Warford informed Ross that the hours were acceptable and that she could make the trip to Kentucky to retrieve the equipment, Ross informed her that the company was very pleased to make her an offer for the position at the rate of $32.00 per hour and that BCN was "very happy to have you," to which Warford informed Ms. Ross that she was excited about the offer.

18.     The next morning, March 23, Warford called Ross back around 10:00 A.M. to inform her that she was excited to formally accept the company's offer.

19.     As such, Warford and Ross began making arrangements for Warford's official start date and for Warford to travel to Kentucky to retrieve the necessary equipment to perform her work remotely from South Carolina.

20.     Ross inquired whether Warford would be able to start on April 11 and pick up the equipment prior to that time. Warford responded by asking her if it would be possible for her to either start a little earlier than April 11 and, if so, she could come to retrieve the equipment immediately or, alternatively, whether it would be possible to start a little later than the 11th. Warford informed Ross that the reason she was hoping to start either a little sooner or later was because Warford was pregnant and her due date was April 19.

21.     This was the first time that the company became aware Warford was pregnant.

22.     Ross' response to Warford telling her that she was pregnant and due on April 19 was, "OH. Let me see if we can get Sallie (Director of Support Center) on the call." At that point Warford was placed on a long hold while Ross proceeded to conference call in Sallie Kenney, who was one of the individuals who had initially interviewed Warford for the job. When Warford was removed from "hold", both Ms. Ross and Sallie Kenney were on the line.

23.     When Ms. Kenney came on the line, she informed Warford that the company's goal was to go live with the Virtual Support Center on May 1 (despite the comments made during Warford's interview that there was "no specific projected start date for the position") and that it would require about 3 weeks of training/on-boarding to get prepared. She also informed Warford that she could not come to retrieve the equipment any earlier than April 8.

4

24.     Warford specifically informed Ms. Kenney that she would **not** be requesting any time off other than potentially the 1-2 days she would actually be hospitalized giving birth (assuming those days even fell on a scheduled work day at all).

25.     This was also Warford's fourth childbirth and, combined with her own medical expertise as an RN, Warford was very familiar with that process.

26.     Despite Warford's assurances that she was not going to require any extra time off, Ms. Kenney was very pessimistic and did not seek to discuss any potential alternative options other than a hard and fast start date on April 11. At the end of the call, Ms. Kenney told Warford that she could reapply for future openings and that she "should be focusing on her baby anyways."

27.     When Warford got off the call with Ms. Ross and Ms. Kenney, she was devastated and immediately called her husband to tell him what happened. After further discussion with her husband, Warford determined that she would make the requested April 11 start date work and pick up the equipment before that time because the job was incredibly important to her.

28.     As such, on March 23, 2022, at 1:14 P.M., Warford emailed Ms. Kenney to inform her that she "will be able to make the April 11 start date work" and "pick up the equipment on April 8, as requested." Warford also confirmed, once again, that "I am not asking for any time off."

29.     Approximately one hour after sending the email to Ms. Kenney, Warford also called Danita Ross in HR, who told her that Ms. Kenney had forwarded Warford's email to her. As stated in her email to Kenney, Warford informed Ms. Ross that after discussing it further with her husband, she would be able to make the April 11 start date work.

30.     Ms. Ross' response to Warford complying with BCN's requested start date of April 11 was "How? You are still having the baby, correct?" Ms. Ross repeatedly asked Warford during

5

the call "how" she was going to make the April 11 start date work and stated "Well, you can't guarantee us that you aren't going to have delivery complications."

31. Warford and Ms. Ross ended the call with Ms. Ross telling her to maintain email communication with Sallie Kenney, keep an eye on the website for future openings and reapply, and "hopefully the stars will align in the future and something will open up."

32. BCN never allowed Warford to start the job it had formally offered her and which she had accepted or hire/interview her for any other positions with BCN.

## FIRST CAUSE OF ACTION
### Violation of Title VII/Pregnancy Discrimination Act "PDA"
### (Discrimination on the Basis of Pregnancy/Gender)

33. Plaintiff incorporates all allegations above into this cause of action.

34. Defendant engaged in a pattern and practice of unlawful discrimination on the basis of pregnancy by, among other acts, refusing to hire and/or immediately revoking the job offer Warford had accepted upon finding out that Warford was pregnant, thereby discriminating against her in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Pregnancy Discrimination Act ("PDA").

35. Defendant at all times relevant hereto had actual and constructive knowledge of the conduct described herein.

36. Defendant failed to take all reasonable steps to prevent the discrimination based on pregnancy from occurring.

37. Defendant violated Title VII of the Civil Rights Act of 1964, as amended, and the PDA by failing to adequately supervise, control, or discipline and/or otherwise penalize the conduct, acts, and failures to act of Defendant as described herein.

38. Within three hundred (300) days of Defendant's discrimination set forth above, Warford initiated the process of filing a charge on the basis of pregnancy discrimination in employment with the EEOC, Charge No. 415-2022-01590. Thereafter, the EEOC issued a Right to Sue notice dated March 8, 2023, authorizing this lawsuit. Warford has exhausted her administrative remedies.

39. As a direct and proximate result of Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, and the PDA, Warford has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Warford is thereby entitled to general and compensatory damages in amounts to be proven at trial.

40. As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, as amended, Warford has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with BCN and has thereby incurred, and will continue to incur, legal fees and costs. Warford requests that attorney's fees be awarded pursuant to 42 U.S.C. § 2000e-5(k).

41. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for Plaintiff's rights protected by federal law and, therefore, Plaintiff is entitled to recover punitive damages.

**SECOND CAUSE OF ACTION OF ACTION**
**(Retaliation under Title VII/PDA)**

42. Plaintiff incorporates all allegations above into this cause of action.

43. As herein alleged, Warford engaged in protected activity by notifying BCN that she could potentially require a reasonable accommodation for her pregnancy/childbirth complications in

the form of a modified start date, if possible, and/or BCN perceived her as engaging in protected activity by perceiving her as requesting a reasonable accommodation for her pregnancy/childbirth complications.

44. As herein alleged, BCN illegally retaliated against Warford by rescinding her previously offered and accepted job opportunity with BCN, by and through its officers and employees, upon learning that Warford potentially required a reasonable accommodation for her pregnancy/childbirth complications and/or by perceiving Warford as requiring/requesting a reasonable accommodation for her pregnancy/childbirth complications.

45. BCN further illegally retaliated against Warford by continuing to refuse to hire her for other available positions for which she was qualified and ready and willing to fulfill with BCN following the initial job offer revocation/failure to hire. Defendant had no legitimate business reasons for any of such acts.  Each of said acts of retaliation are in violation of Title VII of the Civil Rights Act of 1964, as amended.

46. Warford is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant may have engaged in other retaliatory practices against her which are not yet fully known.  At such time as such retaliatory practices become known, Warford will seek leave of Court to amend this Complaint in that regard.

47. Within three hundred (300) days of Defendant's discriminatory and retaliatory actions set forth above, Warford initiated the process of filing a charge on the basis of retaliation based on a perceived disability in employment with the EEOC, Charge No. 415-2022-01590. Thereafter, the EEOC issued a Right to Sue notice dated March 8, 2023, authorizing this lawsuit. Warford has exhausted her administrative remedies.

48. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination and retaliation against her, Warford has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Warford has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Warford is thereby entitled to general and compensatory damages in amounts to be proven at trial.

49. As a further, direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, as amended, as heretofore described, Warford has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Warford requests that attorney's fees be awarded pursuant to Title VII of the Civil Rights Act of 1964, as amended.

50. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for Plaintiff's rights protected by federal law and, therefore, Plaintiff is entitled to recover punitive damages.

WHEREFORE, Warford requests that judgment be entered against Defendant on all causes of action and that she be awarded such an amount of actual and special damages as the trier of fact may find (including, but not limited to, lost back and future wages, income and benefits, expenses associated with finding other work, emotional distress, pain and suffering, loss of enjoyment of life, anxiety, inconvenience, mental anguish, embarrassment, humiliation, physical injuries, loss of professional standing, character and reputation), punitive damages, prejudgment interest, the costs and disbursements of this action, including reasonable attorney's fees, and for such other and further relief as the court deems just and proper.

                                          FALLS LEGAL, LLC

                                          s/ J. Scott Falls
                                        J. Scott Falls
                                        Attorney Identification No.  10300
                                        Email: scott@falls-legal.com
                                        Ashley L. Falls
                                        Attorney Identification No.  12083
                                        Email: ashley@falls-legal.com
                                        Post Office Box 12910
                                        Charleston, South Carolina 29422
                                        Telephone: (843) 737-6040
                                        Facsimile:  (843) 737-6140

                                        Attorneys for Plaintiff Francine Warford

Charleston, South Carolina
May 26, 2023

10